UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
TYVIE D. LAFRANCE,

                Plaintiff,

— against —

ERIC BEMBEN, ET. AL.,

                Defendants.
-------------------------------------------------------X

**MEMORANDUM AND ORDER**

10-cv-4583 (SLT) (MDG)

**TOWNES, United States District Judge:**

Tyvie D. LaFrance ("Plaintiff"), proceeding *pro se*, alleges that his rights were violated when he was unlawfully arrested and detained on October 3, 2007 by several members of the New York Police Department ("NYPD"). Plaintiff initially filed his lawsuit against Officer Eric Bemben and three unidentified officers of the NYPD. Those individuals have since been identified as Officer John Latremore and Sergeants Silvia Davis and Sujat Khan (together with Bemben, "Defendants"). Presently, Defendants seek summary judgment on all of Plaintiff's claims, which motion Plaintiff has not opposed. For the reasons that follow, the court grants Defendants' motion in its entirety.

I. STANDARDS OF REVIEW

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding a summary judgment motion, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Additionally, "[a] *pro se* party's submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a *pro se* plaintiff's claims are subject to a final dismissal." *Ferguson v. Bizzario*, 2010 WL 4227298, at *3 (S.D.N.Y. Oct. 19, 2010).

The moving party bears the burden of showing that no genuine issue of fact exists. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998). When, as here, a non-moving party does not submit an opposition brief, a court must still assure itself that no material issue of fact exists. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Id.* (emphasis in original) (internal quotation marks omitted). An unopposed summary judgment motion may also fail "where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

## II. BACKGROUND

Plaintiff did not respond to Defendants' motion for summary judgment nor did he submit a statement of material facts pursuant to Local Rule 56.1. As a result, the following facts are drawn from Defendants' statement of facts ("Defs. SOF"), but are construed in a light most favorable to Plaintiff, the non-moving party. On the morning of October 3, 2007, Plaintiff began traveling by subway to his brother's funeral with his wife, Wileen; his daughters, Hadiya and Yemaya; his stepdaughters, Jasmine, Angelinsa, and Portrait; and his nieces Cherise and Vonteh. (Defs. SOF ¶ 3.) After exiting the subway, Plaintiff stopped to make phone calls to obtain precise directions to the funeral. (Id. ¶ 4.) While Plaintiff was making those calls, his stepdaughter Jasmine, was who fifteen years old, became frustrated and stated that she was going to find her own way to the funeral. (Id. ¶ 5.) She then walked off with Plaintiff's daughter, Hadiya. (Id.) Plaintiff, joined by his stepdaughter Portrait, his other daughter Yemaya, and his nieces, Cherise and Vonteh, pursued Jasmine and Hadiya. (Id. ¶ 6.) According to Plaintiff, when he caught up to Jasmine and Hadiya he smacked Hadiya in the face and pushed Jasmine

2

in both the front and back of her head. (Id. ¶ 7; Plaintiff's Deposition ("Pl. Dep.") at 40-41.) Plaintiff later learned from Jasmine that Vonteh, his niece, called the police. (Defs. SOF ¶ 11.)

While on patrol, Bemben received a radio communication regarding a possible assault. (Id. ¶ 12.) Bemben and Khan responded to the communication. (Id. ¶ 13.) Upon arrival, Bemben spoke to Jasmine, who stated that her stepfather had pushed her in the back of her head and slapped her twice in the face, which the second time caused her to fall against the side of a parked car. (Id. ¶ 15.) Jasmine then identified Plaintiff to Bemben and Khan as her stepfather. (Id. ¶ 16.) Bemben approached Plaintiff and asked him a few questions, but Plaintiff refused to answer them. (Id. ¶ 18.) At some point, although it is unclear when, Davis arrived at the scene as well. (Pl. Dep. at 65.) After Plaintiff refused to answer any questions, Bemben asked Davis if he should arrest Plaintiff and Davis said that he should. (Id.) At that point, Bemben placed Plaintiff under arrest for Assault in the Second Degree. (Defs. SOF ¶ 19.) Plaintiff was handcuffed with his hands behind his back and placed in the back of a police car. (Id. ¶ 24.) Throughout the incident, Khan did not say anything to Plaintiff or ask him any questions. (Id. ¶ 21.) Once in the car, Plaintiff complained that the handcuffs were too tight and that he was uncomfortable sitting with his hands behind his back. (Pl. Dep. at 68-69.) Bemben advised Plaintiff that he would remove the handcuffs when they arrived at the 77th police precinct and, according to Plaintiff, did in fact remove them two to three minutes after arriving at the precinct. (Defs. SOF ¶ 25; Pl. Dep. at 69.) In addition to those few minutes, Plaintiff had the handcuffs on for approximately five minutes in the police car. (Defs. SOF ¶ 24.) As a result, Plaintiff noted that he had pressure grooves on his wrists from the handcuffs, but suffered no bruising or cuts to his wrists. (Id. ¶ 28.) Further, except for his request for aspirin upon his arrival at the police precinct, Plaintiff did not seek any medical attention in connection with his October 3, 2007 arrest. (Id.) Also at the precinct, Plaintiff alleges that he gave Latremore his digital camera storage disk, but Latremore did not voucher it, Plaintiff did not ask that it be vouchered, and Plaintiff made no attempt to retrieve it following

3

his release. (Id. ¶¶ 29-30; Pl. Dep. at 83.)

At some point after Plaintiff's arrest, Jasmine and a woman who identified herself as Jasmine's aunt arrived at the police precinct. In Bemben's presence, Jasmine filled out a statement of allegations for a New York Domestic Incident Report, in which she indicated that her stepfather smacked her across her face causing her to fall against a car. (Id. ¶¶ 31-32.) Jasmine also informed Bemben that as a result of the altercation with her stepfather, she suffered bruising and swelling to her left cheek, substantial pain, and feared further physical injury. (Id. ¶ 33.) This information was provided to the Kings County District Attorney's Office ("D.A.'s Office") and an Assistant District Attorney drafted a criminal court complaint in connection with Plaintiff's arrest. (Id. ¶¶ 34-35.) Bemben signed the criminal complaint and the D.A.'s Office decided to prosecute Plaintiff for Assault in the Third Degree, Attempted Assault in the Third Degree, Menacing in the Third Degree, harassment in the Second Degree, and Endangering the Welfare of a Child. (Id. ¶¶ 36-37.)

At Plaintiff's arraignment an Order of Protection was issued directing him to stay away from Jasmine's residence. (Id. ¶ 38.) On November 15, 2007, Plaintiff again appeared in court, at which time the Order of Protection was continued. (Id. ¶ 39.) On December 10, 2007, the charges against Plaintiff were dismissed. (Id. ¶¶ 40-41.)

### III. DISCUSSION

As an initial matter, the court notes that Plaintiff's complaint does not refer to a specific statute or constitutional right. Nonetheless, the court construes the complaint to allege the following causes of action arising under 42 U.S.C. § 1983: (1) excessive force, (2) false arrest, (3) malicious prosecution, (4) deprivation of property in violation of his due process rights, and (5) Defendants' failure to issue him *Miranda* warnings. In addition, the court reads Plaintiff's complaint as raising causes of action on behalf of his children and unspecified family members as well as a state cause of action for the intentional infliction of emotional distress.

The court also notes that in their motion for summary judgment, Defendants seek to

4

shield themselves from liability under section 1983 by invoking the protection of qualified immunity. The qualified immunity inquiry comprises a two part test. A court must determine whether (1) the plaintiff's allegations, if true, establish a constitutional violation and, if so, (2) whether the constitutional right at issue was clearly established at the time of the putative violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has indicated that the inquiry need not be taken sequentially, see *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and, if a court finds that "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Put another way, if a plaintiff fails to establish a constitutional violation, the court need not decide whether the defendants would nonetheless be entitled to qualified immunity. Thus, given that, for the following reasons, the court finds that Plaintiff has not established a constitutional violation under section 1983, it does not decide whether Defendants may also be entitled to qualified immunity.

A. Excessive Force

Claims that the police used excessive force are "judged under the Fourth Amendment's 'objective reasonableness' standard." *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004)). Police officers' "application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment, and several courts in this Circuit have required plaintiffs to allege more than a *de minimis* use of force to succeed on their excessive force claims." *Nogbou v. Mayrose*, 2009 WL 3334805, at *6 (S.D.N.Y. Oct. 15, 2009) (citation and internal quotation marks omitted).

"Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective

5

handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Esmont v. City of New York*, 371 F.Supp. 2d 202, 214 (E.D.N.Y. 2005). To assess the reasonableness of the handcuffing, a court must consider whether 1) the handcuffs were unreasonably tight, 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight, and 3) the degree of injury to the wrists. *Id.* at 215. "There is a consensus among courts in the Second Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Matthews v. City of New York*, -- F. Supp. 2d –, 2012 WL 3839505, at *17-18 (E.D.N.Y. Sept. 5, 2012) (internal quotation marks and citation omitted).

Here, Plaintiff has not alleged any kind of injury or harm due to the tight handcuffs other than his temporary discomfort. To the contrary, Plaintiff testified at his deposition that after the handcuffs were removed, he had only a "pressure groove" on his wrists, suffered no bruises at all, and sustained no cuts. (Pl. Dep. at 97.) And, although Plaintiff requested aspirin for his hands at the police precinct, he described the pain as only "kind of smarting." (Id.) Moreover, Plaintiff testified that, other than the aspirin he requested, at no point did he seek any medical attention for any reason related to his October 3, 2007 arrest. (Id. at 135.) Given Plaintiff's own testimony that the handcuffs did not cause him any injury, summary judgment is appropriate. *See Matthews*, --- F.Supp. 2d --, 2012 WL 3839505, at *19 (cautioning plaintiffs that "in order to withstand summary judgment, they must provide medical evidence that the handcuffs caused serious, long-lasting, or persistent injury.").

B. False Arrest

A section 1983 claim for false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false arrest under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Under New York law, the torts of false arrest and false imprisonment are "synonymous," *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991), and the elements of a false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the

confinement was not otherwise privileged. *Jocks*, 316 F.3d at 134–35. The existence of probable cause to arrest constitutes a "complete defense" to an action for false arrest, whether that action is brought under section 1983 or state law. *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010). Moreover, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993).

New York law provides, in pertinent part, that: "[a] person is guilty of assault in the third degree when: 1. [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person; or 2. [h]e recklessly causes physical injury to another person." N.Y. Penal L. § 120.00(1), (2). Upon their arrival at the scene, the responding officers spoke to Jasmine who informed them that Plaintiff, her stepfather, had pushed her head and slapped her twice, causing her to fall onto a parked car. (Declaration of Eric Bemben ("Bemben Decl.") ¶ 6.) Jasmine's story was corroborated by an eyewitness to the event. (Id. ¶ 8.) The officers then attempted to speak to Plaintiff, who would not answer any questions about the incident. (Pl. Dep. at 50-51 (indicating that Plaintiff refused to cooperate with the police because he was "under no obligation to tell them anything about [his] family. It [was] a personal matter.").) Under these circumstances, the court finds that Defendants had probable cause to arrest Plaintiff.[1]

---

[1] Although not raised by either party, the court notes that the Supreme Court has unanimously ruled that "probable cause to arrest exists when the officer has probable cause to believe the arrestee has committed any offense, not merely the offense identified at booking or the time of arrest." *Esmont*, 371 F. Supp. 2d at 210 n.9 (citing *Devenpeck v. Alford*, 543 U.S. 146 (2004)); *see also Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."). It is therefore immaterial that Plaintiff was arrested for assault in the second degree because the court finds that probable cause also existed at the time of Plaintiff's arrest for assault in the third degree, with which Plaintiff was eventually charged.

To be sure, the court notes discrepancies between Plaintiff's version of events and that provided by Jasmine. Plaintiff testified that he smacked Hadiya in the face and not Jasmine and that although he pushed Jasmine's head when she was standing by a parked car, she did not fall into the car. (*See* Pl. Dep. at 40-41.) Nonetheless, in light of Plaintiff's refusal to provide any information to the police officers to rebut the facts presented to them by Jasmine and the unidentified eyewitness, the officers had no reason to disbelieve Jasmine and therefore acted with probable cause in arresting Plaintiff. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (noting that a victim's identification of an assailant is, by itself, sufficient "probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."). Thus, Plaintiff's claim for false arrest fails.

C. Malicious Prosecution

A malicious prosecution action implicates the Fourth Amendment constitutional right "to be free of unreasonable seizure of the person -- *i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Id.* at 116. In order to prevail on a section 1983 claim against a state actor for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against him or her, (2) termination of the proceeding in his or her favor, (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motivation for defendants' actions. *Id.* at 161. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). "Unlike an arrest, which only requires probable cause that 'the suspect had committed *an* offense,'" however, "a prosecution requires probable cause 'to charge the suspect with *each* of the crimes.'" *Kavazanjian v. Rice*, 2005 WL 1377946, at *4 (E.D.N.Y. June 6, 2005) (quoting *Lowth v. Town*

of *Cheektowaga*, 82 F.3d 563, 569, 571 (2d Cir. 1996)) (internal alterations omitted) (emphasis in original).

The court grants Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claims against the police officers. Plaintiff has not alleged, and the court is not aware of any evidence in the record, that Defendants were in any way involved in initiating Plaintiff's prosecution. (*See* Complaint ¶¶ 11, 15, 23 (alleging that Plaintiff was prosecuted based on information provided to the district attorney by the police but in no way indicating that such information was false or misleading or that the police had any role in the decision to prosecute him).) To the contrary, Bemben's declaration indicates that the police officers had no role whatsoever in the decision to prosecute Plaintiff. Bemben states that after the officers provided the D.A.'s Office with the information that formed the basis of Plaintiff's arrest, "[a]n Assistant District Attorney drafted a criminal court affidavit in connection with plaintiff's arrest," and the "[D.A.'s Office] made the decision to prosecute [Plaintiff]." (Bemben Decl. ¶¶ 13-15.) The mere fact that Bemben provided this information to the D.A.'s Office is insufficient to ground a claim against Defendants for malicious prosecution. *See Hewitt v. City of New York*, 2012 WL 4503277, at *7 (E.D.N.Y. Sept. 28, 2012) (noting that individuals who do "no more than disclose to a prosecutor all material information within [their] knowledge [are] not deemed to be the initiator[s] of the proceeding.") (quoting *Rohman v. New York City Trans. Auth.*, 215 F.3d 208, 217 (2d Cir. 2000)). Indeed, Bemben expressly asserts that he "did not initiate the prosecution of [Plaintiff]" and "did not encourage the prosecution of [Plaintiff] in any manner." (Bemben Decl. ¶¶ 16-17.) Under these circumstances, summary judgment as to Plaintiff's claim of malicious prosecution is warranted. *See Felmine v. City of New York*, 2011 WL 4543268, at *11 (E.D.N.Y. Sept. 29, 2011) ("[A] malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police.") (quotation marks and citation omitted) (second alteration in original).

## D. Deprivation of Property (Due Process)

Plaintiff alleges in his complaint that Bemben, through "the threat of force," as well as the "use of shackles and handcuffs . . . forcibly took [his] . . . property." (Complaint ¶ 6.) Plaintiff further alleges that Latremore "assisted [Bemben] in the removal of said property." (Id. ¶ 7.) Plaintiff's testimony at his deposition, however, indicated that only Latremore was involved in taking his property. (Id. at 84.) Plaintiff also specified that the property at issue was a digital camera storage disk, akin to a memory card. (Pl. Dep. at 71.) Plaintiff testified that he voluntarily provided the memory card to Latremore when, following his removal from holding, he was asked whether he had anything in his pockets and realized that he had the memory card. (Id. at 84.)

As best the court can determine, Plaintiff appears to allege that Latremore's receipt of Plaintiff's property constituted a violation of his due process rights. However, "[d]eprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *Dove v. City of New York*, 2000 WL 342682, at *3 (S.D.N.Y. March 30, 2000) (citing *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990) (adequate post-deprivation remedy is defense to section 1983 claim based on "random and unauthorized" deprivation but not to claim "where the deprivation complained of results from the operation of established state procedures")); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property not actionable under section 1983 if meaningful post-deprivation remedy available under state law); *Parratt v. Taylor*, 451 U.S. 527, 542–43 (1981) (negligent deprivation of property not actionable under section 1983 where post-deprivation remedy available), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

Here, Plaintiff has not alleged that his deprivation was the result of an established state procedure. Rather, Plaintiff testified that Latremore never vouchered the memory card and that

10

he, Plaintiff, voluntarily turned the card over to Latremore when he was asked if he had anything in his pockets. (Pl. Dep. at 83-84.) On these facts, Plaintiff has not demonstrated that the alleged deprivation was anything other than the result of Latremore's own conduct or omission, and not the result of established procedure. Moreover, where, as here, the "loss of property was 'random and unauthorized,' courts have found that 'New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion." *Cantave v. New York City Police Officers*, 2011 WL 1239895, at *7 (E.D.N.Y. Mar. 28, 2011). Plaintiff may avail himself of these remedies if he so chooses. The fact that he has opted to not make any attempt to retain his property because of his avowed dislike for the police and because he did not wish to return to the precinct, (Pl. Dep. at 84), in no way diminishes the availability of these options to him and is insufficient to defeat Defendants' motion for summary judgment as to this claim.

E. Miranda Rights

Plaintiff also appears to allege that his constitutional rights were violated by Defendants' failure to read him his *Miranda* warnings either before his arrest or after his arrival at the precinct. (Complaint ¶ 18.) As the Supreme Court has indicated, however, *Miranda* warnings are not constitutionally mandated but are merely procedural safeguards to ensure that a suspect's Fifth Amendment rights are not violated. *See New York v. Quarles*, 467 U.S. 649, 654 (1984). As such, "plaintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer *Miranda* warnings." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (*citing Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). Rather, the appropriate remedy for the failure to read a suspect his *Miranda* warnings is the exclusion of any self-incriminating evidence, not liability under section 1983. *Neighbour*, 68 F.3d at 1510. Accordingly, the court grants summary judgment to the extent Plaintiff asserts a section 1983 claim against Defendants for any failure to issue him *Miranda* warnings.

11

F. Claims on Behalf of his Children

Plaintiff appears to allege that Defendants engaged in conduct that harmed his daughters as well as unspecified family members. (Complaint ¶¶ 10, 13, 14.) However, as Plaintiff is a non-attorney proceeding *pro se*, he is not permitted to appear on an adult family member's behalf. See *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B][ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him."). Nor may he appear on behalf of his children. See *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 285 (2d Cir. 2005) (noting the "well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child."). Accordingly, to the extent Plaintiff asserts claims against Defendants on behalf of family members other than himself, Defendants are entitled to summary judgment.

G. Intentional Infliction of Emotional Distress

Although not addressed by Defendants, Plaintiff's complaint, liberally construed, may be fairly read to also include a claim against Defendants for the intentional infliction of emotional distress. In order to establish that Defendants are liable for the tort of intentional infliction of emotional distress, Plaintiff must prove the following four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)). In the court's view, no reasonable factfinder could resolve this claim in Plaintiff's favor.

Plaintiff alleges that Defendants donned riot gloves and unsnapped their gun holsters, which he interpreted to mean "that [he would] be shot in front of [his] daughters which caused [him] to have concern for his life and safety as well as the life and safety of his family." (Complaint ¶ 10.) The court does not find such conduct to be "extreme and outrageous," especially given that Defendants had probable cause to arrest Plaintiff, and that a reasonably

12

objective police officer could have determined, based on the evidence that was available at the time of the arrest, that Plaintiff was guilty of a crime. *See Fudge v. Town of Shandaken Police*, 2010 WL 3258385, at *9 (N.D.N.Y. Aug. 16, 2010) (noting that defendants police officers' actions did not constitute extreme and outrageous conduct necessary to sustain an intentional infliction of emotional distress because defendants acted with probable cause in arresting plaintiff). Summary judgment is therefore appropriate as to this claim as well.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [37] is GRANTED. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.

s/Sandra L. Townes

/SANDRA L. TOWNES
United States District Judge

Dated: January 7, 2013
Brooklyn, New York